# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G & G CLOSED CIRCUIT EVENTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ANA LINDA VELASQUEZ, et al.,<br><br>Defendants. | Case No. 1:20-cv-01736-NONE-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT BE PARTIALLY GRANTED<br><br>ORDER REQUIRING PLAINTIFF TO SERVE FINDINGS AND RECOMMENDATIONS<br><br>(ECF No. 15)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

## I.

## INTRODUCTION

Currently before the Court is Plaintiff G & G Closed Circuit Events, LLC's motion for default judgment filed on June 14, 2021. (ECF No. 15.)[1]  On July 21, 2021, the Court held a hearing on the motion for default judgment via videoconference.  No Defendants made an appearance at the hearing.  Having considered the moving papers, the declarations and exhibits attached thereto, arguments presented at the July 21, 2021 hearing and the nonappearance of

---

[1]  All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

Defendants, as well as the Court's file, the Court issues the following findings and recommendations recommending Plaintiff's motion for default judgment be granted in part, with reductions in the damages sought as discussed below.

## II.

## BACKGROUND

### A.    Procedural History

On December 9, 2020, G & G Closed Circuit Events, LLC ("Plaintiff"), filed this action against Defendants Ana Linda Velasquez ("Ana"), Erika Gabriela Velasquez ("Erika"), and Salvador Velasquez ("Salvador") (collectively "Defendants").  (ECF No. 1.)  On February 22, 2021, Plaintiff returned executed summonses demonstrating that: Defendant Ana was served on February 5, 2021, and that Defendants Erika and Salvador were served on February 16, 2021.  (ECF Nos. 7, 8, 9.)  No Defendants filed a responsive pleading, a motion to dismiss, or otherwise appeared in this action.

On April 1, 2021, Plaintiff filed a request for entry of default, and on the same date, the Clerk of the Court entered default against Defendants Ana, Erika, and Velasquez.  (ECF Nos. 12, 13.)  On June 14, 2021, Plaintiff filed a motion for default judgment against Defendants.  (ECF No. 15.)  On June 21, 2021, the Court held a hearing on Plaintiff's motion via videoconference, at which Counsel Thomas Peter Riley, Jr., appeared on behalf of Plaintiff.  (ECF No. 16.)  No appearances were made on behalf of Defendants on the public access telephone line, nor in person, despite the courtroom being open to the public.

### B.    Factual Allegations Contained in the Operative Complaint

Plaintiff is a California company with its principal place of business in Las Vegas, Nevada.  (Compl. ¶ 6.)   At all relevant times, including Saturday, December 20, 2019,[2] Defendants were owners, operators, licensees, permittees, and/or an individuals with dominion, control, oversight, and management of the commercial establishment doing business as Las Patronaz Bar, operating at 21153 Road 600, Suite D, Madera, California 93639 ("Las Patronaz"

---

[2]  As to Defendant Erika, Plaintiff uses the date November 2, 2019, though this appears to simply be a typographical mistake.  (See Compl. ¶ 9.)

or the "Establishment").  (Compl. ¶ 7.)  At all relevant times, including December 20, 2019, Defendants were each specifically identified as licensees on the California Department of Alcoholic Beverage Control License issued for Las Patronaz (ABC # 592938).  (Compl. ¶¶ 8 10, 12.)

Pursuant to contract, Plaintiff was granted the exclusive nationwide commercial distribution (closed-circuit) rights to the Daniel Jacobs v. Julio Cesar Chavez, Jr., Championship Fight Program, including all under-card bouts and fight commentary encompassed in the television broadcast of the event, that was telecast nationwide on Saturday, December 20, 2019 (hereinafter the "Program").  (Compl. ¶ 20, ECF No. 1.)  Pursuant to contract, Plaintiff entered into subsequent sublicensing agreements with various commercial entities throughout North America, including entities within the State of California.  Through these sublicensing agreements, Plaintiff granted these entities limited sublicensing rights, specifically the rights to publicly exhibit the Program within their respective commercial establishments.  (Compl. ¶ 21.) The Program could only be exhibited in a commercial establishment in California if said establishment was contractually authorized to do so by Plaintiff.  (Compl. ¶ 22.)  As a commercial distributor and licensor of sporting events, including the Program, Plaintiff expended substantial monies marketing, advertising, promoting, administering, and transmitting the Program to its customers, the aforementioned commercial entities.  (Compl. ¶ 23.)  The Program originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies to Plaintiff's sub-licensees.  (Compl. ¶ 24.)

Plaintiff alleges that at on December 20, 2019, Defendants had the right, ability, as well as the obligation to supervise the activities of Las Patronaz, including the unlawful interception, receipt, and publication of the Program.  (Compl. ¶¶ 13, 14.)  Plaintiff further alleges that on December 20, 2019, Defendants specifically directed or permitted the employees of Las Patronaz to unlawfully intercept, receive, and publish the Program at Las Patronaz, and the actions of the employees are directly imputable to Defendants as responsible for Las Patronaz.  (Compl. ¶ 15.) Plaintiff alleges the unlawful broadcast of the Program at Las Patronaz on December 20, 2019, resulted in increased profits; that on the date, Las Patronaz sold food and alcohol to its patrons;

and Defendants advertised that the Program would be shown at Las Patronaz on the public Facebook page for Las Patronaz.  (Compl. ¶¶ 16, 17, 18.)

Plaintiff's first cause of action is a claim for violation of 47 U.S.C. § 605 due to Defendants intercepting, receiving, and publishing the Program at Las Patronaz on December 20, 2019.  (Compl. ¶¶ 19-31.)  For the first cause of action, Plaintiff's complaint requests statutory damages in an amount up to $10,000 for each violation pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); statutory damages for each willful violation in an amount of $100,000.00 pursuant to 47 U.S.C. 605(e)(3)(C)(ii); and recovery of full costs, including reasonable attorneys' fees, pursuant to 47 U.S.C. Section 605(e)(3)(B)(iii).  (Compl. ¶ 31.)

Plaintiff's second cause of action is for violation of 47 U.S.C. § 553, for interception or receipt of communications offered over a cable system absent specific authorization.  (Compl. ¶¶ 32-37.)  For the second cause of action, Plaintiff's complaint requests statutory damages for each violation in an amount up to $10,000.00 pursuant to 47 U.S.C. § 553(c)(3)(A)(ii); statutory damages for each willful violation in an amount up to $50,000.00 pursuant to 47 U.S.C. § 553(c)(3)(B); recovery of full costs pursuant to 47 U.S.C. § 553 (c)(2)(C); and reasonable attorneys' fees, pursuant to 47 U.S.C. § 553(c)(2)(C).  (Compl. ¶ 37.)

Plaintiff's third cause of action is for conversion, and seeks compensatory, as well as punitive and exemplary damages for this claim.  (Compl. ¶¶ 38-41.)

Plaintiff's fourth cause of action is for violation of California Business and Professions Code § 17200, *et seq.*  (Compl. ¶¶ 42-51.)  Plaintiff seeks restitution, declaratory relief, injunctive relief, attorneys' fees, and costs for this claim.[3]

### C.   Additional Factual Information provided by Declaration of the President of Plaintiff, Counsel for Plaintiff, and Plaintiff's Investigator

The affidavit of the investigator hired by Plaintiff and that was physically present in Las Patronaz on the relevant date, states in relevant part:

[O]n December 20th, 2019 at 8:00 p.m.  I entered Las Patronaz Bar located at

---

[3]  As discussed herein Plaintiff is only seeking damages on the first cause of action for violation of 47 U.S.C. § 605, and the third cause of action for conversion.  Further, Plaintiff is not seeking attorneys' fees at this time, and will file a request for attorneys' fees following the entry of judgment.

21153 RD 600; Suite D, Madera, CA.  I paid a cover charge of $0 to enter this establishment.  I sat at an empty table and did a visible head count of 8 people . . .

. . . I observed 1 television approximately 55 inches located inside this establishment.  The television was mounted on the wall behind the bar on the left side.

At the time I was inside the above establishment, I observed [the Program] on the above television[.] . . .

. . . The capacity of this establishment is approximately 50 people.  This was a medium sized, restaurant.  At the time of my appearance I counted the number of patrons (3) separate times.  The head counts were 8, 6, 6.

I left the above establishment at 8:30 p.m.

(Aff. Investigator Mario Galvez ("Galvez Aff."), ECF No. 15-3 at 2.)

Plaintiff's counsel submits what they proffer to be a true and correct copy of a Facebook post from Las Patronaz, and requests the Court to consider the exhibit as a non-hearsay party admission under Federal Rule of Evidence 801(d)(2)(A).  (Decl. Thomas P. Riley Supp. Pl.'s Appl. Default J ("Riley Decl.") ¶ 10, ECF No. 15-4 at 1-3; Ex. 1, ECF No. 15-4 at 1.)  The picture shows an advertisement for the Jacobs vs. Chavez Jr. fight scheduled for December 20, and the Facebook post, dated December 20, 2019, attaching the fight advertisement, appears to be from Las Patronaz's Facebook account, and states: "We will have these fights tonight.  Come enjoy some yummy tacos and a cold beer."  (Ex. 1, ECF No 15-4 at 5.)

The President of the Plaintiff LLC ("Plaintiff's President" or "Gagliardi"), provided a declaration, and the Court will summarize some of the information provided in support of the damages requested.  (Decl. Nicolas J. Gagliardi Supp. Pl.'s Appl. Default J. ("Gagliardi Decl."), ECF No. 15-2 at 1-7.)

The commercial sublicense fee to broadcast the Program varies depending on the capacity of the establishment and on the type of event.  (Gagliardi Decl. ¶ 8.)  The cost for an establishment the size of Defendants' bar was $600.00 for the Program.  (Id.)

The methods used to illegally intercept and broadcast programming include: (1) the use of various "blackboxes" to descramble the reception for cable TV; (2) the use of various "smartcards" to descramble with a satellite receiver; (3) the misrepresentation of a commercial establishment as a residential property; (4) utilizing websites that are unauthorized to broadcast;

(5) utilizing foreign satellite broadcasters; (6) utilizing illegal cable drops or splices; and (7) the purchase of other illegal encryption devices or satellite authorization codes. (Gagliardi Decl. ¶ 10.)

Plaintiff's President proffers that piracy has resulted in the loss by Plaintiff of several million dollars of sales revenue; has a detrimental impact on lawful residential and commercial customers whose costs are increased; and results from the perceived lack of significant consequences, including nominal or minimal damages awards by courts. (Gagliardi Decl. ¶¶ 12, 13.) Plaintiff's President thus asks the Court to award up to the maximum statutory damages allowed give the actions are *per se* intentional, and cannot occur without willful and intentional acts purposely designed to obtain the programming unlawfully. (Gagliardi Decl. ¶ 14.)[4] Plaintiff's President submits that while some courts place undue weight upon whether the promotion of the programming was done willfully or for commercial benefit, the willful and purposeful acts necessary to intercept and exhibit the programming precede the steps that are taken in promotion of the programming to customers. (Gagliardi Decl. ¶ 15.)

Further while there is evidence of advertising submitted by counsel here, Plaintiff's President proffers that in his experience, pirates generally do not advertise the fact they intend to exhibit the programming to avoid unnecessary risk of detection, though this does not account for word of mouth undetected by investigators. (Gagliardi Decl. ¶ 16.) Plaintiff's President also submits it is unlikely a pirate would increase costs of food or drink on the broadcast night, and that lawful establishments do not do so as well, though highlights that their auditors do not benchmark prices charged subsequent to the night of the event and so it is undetermined whether the prices in fact change. (Gagliardi Decl. ¶ 17.) Finally, Plaintiff's President proffers the overwhelming majority of pirate establishments do not and will not charge a cover or door charge on the evening of the program, and to do so would defeat the purpose of using the programming, which is to lure customers, and thus if a cover charge were used, the competitive

---

[4] As discussed herein, while the declaration of Plaintiff's President requests the maximum statutory penalties, Plaintiffs' counsel appears to have heeded the Court's previous warnings, and the moving papers request less than the maximum, though still substantial statutory awards.

1   advantage the pirate holds over lawful establishments would be lost.  (Gagliardi Decl. ¶ 18.)

2   In the moving papers, Plaintiff specifically seeks $5,000 in base damages, $25,000 in

3   enhanced damages, and $600 for conversion.  (Riley Decl. ¶ 7.)

**II.**

**LEGAL STANDARD FOR DEFAULT JUDGMENT**

6   "Our starting point is the general rule that default judgments are ordinarily disfavored,"

7   as "[c]ases should be decided upon their merits whenever reasonably possible." NewGen, LLC

8   v. Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470,

9   1472 (9th Cir. 1986).  Pursuant to Federal Rules of Civil Procedure 55, obtaining a default

10  judgment is a two-step process.  Entry of default is appropriate as to any party against whom a

11  judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided

12  by the Federal Rules of Civil Procedure and where that fact is made to appear by affidavit or

13  otherwise.  Fed. R. Civ. P. 55(a).  After entry of default, a plaintiff can seek entry of default

14  judgment.  Fed. R. Civ. P. 55(b). Federal Rule of Civil Procedure 55(b)(2) provides the

15  framework for the Court to enter a default judgment:

16  (b) Entering a Default Judgment.

(2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

26  Fed. R. Civ. P. 55.

27  The decision to grant a motion for entry of default judgment is within the discretion of the

28  court. PepsiCo, Inc. v. California Security Cans, 238 F.Supp.1172, 1174 (C.D. Cal. 2002).  The

Ninth Circuit has set forth the following seven factors (the "Eitel factors") that the Court is to consider in exercising its discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72.

Generally, once default has been entered, "the factual allegations of the complaint, except those relating to damages, will be taken as true." Garamendi v. Henin, 683 F.3d 1069, 1080 (9th Cir. 2012) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)); see also Fed. R. Civ. P. 8(b)(6) ("An allegation--other than one relating to the amount of damages--is admitted if a responsive pleading is required and the allegation is not denied."). "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992) ("In reviewing a default judgment, this court must take the well-pleaded factual allegations of [the complaint] as true."). Accordingly, the amount of damages must be proven at an evidentiary hearing or through other means. Microsoft Corp. v. Nop, 549 F.Supp.2d 1233, 1236 (E.D. Cal. 2008). The relief sought must not be different in kind or exceed the amount that is demanded in the pleadings. Fed. R. Civ. P. 54(c).

## III.

## DISCUSSION

The Court first determines whether the Court properly has jurisdiction in this matter, and then turns to the Eitel factors to determine the appropriateness of entering default judgment.

### A.     Jurisdiction

Plaintiff brings claims arising both under federal law, specifically 47 U.S.C. § 605 and 47 U.S.C. § 553, as well as state law. The Court finds it may appropriately exercise subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

### B.    Procedural Requirements

"A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared."  Fed. R. Civ. P. 55.  In counsel's declaration in support of the request for entry of default, counsel declares that none of the Defendants are minors, incompetent persons, persons in the military, or otherwise exempt from default judgment.  (Riley Decl. ¶ 3.)

As a general rule, the Court considers the adequacy of service of process before evaluating the merits of a motion for default judgment.  See J & J Sports Prods., Inc. v. Singh, No. 1:13-CV-1453-LJO-BAM, 2014 WL 1665014, at *2 (E.D. Cal. Apr. 23, 2014); Penpower Tech. Ltd. v. S.P.C. Tech., 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008); Mason v. Genisco Tech. Corp., 960 F.2d 849, 851 (9th Cir. 1992) (stating that if party "failed to serve [defendant] in the earlier action, the default judgment is void and has no res judicata effect in this action."). Service of the summons and complaint is the procedure by which a court having venue and jurisdiction of the subject matter of the suit obtains jurisdiction over the person being served. Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 444–45 (1946); see Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc., 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4.").

"Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." Direct Mail, 840 F.2d at 688 (quoting United Food & Commercial Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir. 1984)).  However, "without substantial compliance with Rule 4, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction.' " Direct Mail, 840 F.2d at 688 (quoting Benny v. Pipes, 799 F.2d 489, 492 (9th Cir.1986)).  "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004) (citations omitted).  "[A] signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." SEC v. Internet Solutions for Bus., Inc., 509 F.3d 1161, 1163 (9th Cir.

1   2007).

2          Defendant Ana was served through personal service; Defendant Erika was served through

3   substituted service on Defendant Ana as a co-resident, and Defendant Velasquez was served

4   through substituted service on Defendant Ana as a co-resident.   (ECF Nos. 7, 8, 9.)   No

5   challenges to service have been presented to the Court.   The Court finds it has proper jurisdiction

6   over Defendants.   See Fed. R. Civ. P. 4(e)(2)(A)-(B) (service may be effectuated by delivery of

7   the summons and complaint to the individual personally or by leaving a copy at an individual's

8   dwelling with someone of suitable age and discretion who resides there).

9          The request for entry of default was served on all Defendants at the address that service

10   of the summons was effectuated.  (ECF Nos. 12, 12-1.)  On April 1, 2021, the Clerk of the Court

11   entered default against Defendants.   Defendants were served with the motion for default

12   judgment and attached materials as well.  (ECF Nos. 15 at 4, 15-1 at 20, 15-2 at 36, 15-3 at 12,

13   15-4 at 6, 15-5.)

14          **C.       The Eitel Factors Weigh in Favor of Granting Default Judgment**

15          As discussed below, the Court finds that consideration of the Eitel factors weighs in favor

16   of granting default judgment in favor of Plaintiff.

17                 1.       Prejudice to Plaintiff if Default Judgment is Not Granted

18          Plaintiff originally filed this action on December 9, 2020.   (ECF No. 1.)   If default

19   judgment is not entered, Plaintiff is effectively denied a remedy for the violations alleged until

20   such time as the Defendants in this action decide to appear in the litigation, which may never

21   occur.   As described above, all Defendants named in this action were served with the operative

22   complaint, and summonses were returned executed.   Defendants were also served with the

23   requests for entry of default, and the motion for default judgment.   No Defendants have filed a

24   responsive pleading or otherwise appeared in the action, none have filed objections challenging

25   service or any opposition to the instant motion for default judgment, and none appeared for the

26   hearing held on July 21, 2021.

27          For all of these reasons, the Court finds Plaintiff would be prejudiced if default judgment

28   is not granted and finds this Eitel factor weighs in favor of granting default judgment in favor of

1   Plaintiff.

2           2.     The Merits of Plaintiffs' Substantive Claims and Sufficiency of Complaint

3        The second and third <u>Eitel</u> factors instruct the Court to evaluate the merits of the

4   substantive claims alleged in the complaint as well as the sufficiency of the complaint itself.  It is

5   appropriate for the Court to analyze these two factors together.  <u>AMUR Equip. Fin., Inc. v. CHD</u>

6   <u>Transp. Inc.</u>, No. 117CV00416AWISKO, 2017 WL 5477379, at *5 (E.D. Cal. Nov. 15, 2017);

7   <u>F.D.I.C. v. Quest, F.S., Inc.</u>, No. SACV 10-00710 DOC, 2011 WL 2560428, at *2 (C.D. Cal.

8   June 27, 2011).  In doing so, the Court looks to the complaint to determine if the allegations

9   contained within are sufficient to state a claim for the relief sought.  <u>Danning v. Lavine</u>, 572 F.2d

10   1386, 1388 (9th Cir. 1978).

11        Above, <u>infra</u> Sections II(B) and II(C), the Court summarized the allegations contained in

12   the operative complaint, and support from the declaration of Plaintiff's President Gagliardi, the

13   affidavit of Plaintiff's investigator, and counsel Riley's declaration, that were submitted in

14   support of the motion for default judgment.  The Court incorporates Sections II(B) and II(C) here

15   by way of reference.

16        **a.**    **Plaintiffs' Causes of Action for Violation of Section 605(a) and Section 553**

17        Section 605(a) prohibits the unauthorized interception and distribution of

18   communications.  47 U.S.C. § 605(a).  "[L]iability under section 605 requires proof that a

19   defendant has (1) intercepted or aided the interception of, and (2) divulged or published or aided

20   the divulging or publishing of, a communication transmitted by the plaintiff."  <u>California</u>

21   <u>Satellite Systems v. Seimon</u>, 767 F.2d 1364, 1366. (9th Cir. 1985).

22        To prevail under 47 U.S.C. § 605 or 47 U.S.C. § 553, Plaintiff must demonstrate that it

23   has a proprietary interest in the Program and that Defendants unlawfully intercepted, received,

24   published, divulged, displayed, and/or exhibited the Program at Las Patronaz without the

25   authorization of Plaintiff.  <u>See</u> 47 U.S.C. § 605(a); 47 U.S.C. § 553(a).

26        Plaintiff's motion highlights that it may only recover under either Section 605 or Section

27   553, and argues to the Court why the Court should award judgment and damages under Section

28   605 rather than Section 553.  (Mem. 8, n.1.)  Plaintiff also notes that entry of default necessitates

1   a finding of liability under both Section 605 and 553.  (Mem. 8-9.)

2         Plaintiff highlights the Ninth Circuit has not ruled on the specific application of Sections

3   605 and 553, however, courts generally apply Section 605 to radio and satellite violations, and

4   Section 553 to cable violations.  See J & J Sports Prods., Inc. v. Marcaida, No. 10-5125 SC, 2011

5   WL 2149923, at *2 (N.D. Cal. May 31, 2011) ("Section 605 prohibits the unauthorized

6   interception of radio or satellite communications, and section 553 prohibits the unauthorized

7   interception of cable signals.") (citations omitted); J & J Sports Prods., Inc. v. Olivares, No.

8   1:10CV01708 LJO DLB, 2011 WL 587466, at *2 (E.D. Cal. Feb. 9, 2011) ("In cases involving a

9   satellite, Section 605 is the proper statute for a damages award.") (citing DirectV, Inc. v. Webb,

10  545 F.3d 837, 844 (9th Cir. 2008)); J & J Sports Prods., Inc. v. Manzano, No. C-08-01872

11  RMW, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008) ("A signal pirate violates section 553

12  if he intercepts a cable signal, he violates section 605 if he intercepts a satellite broadcast.  But he

13  cannot violate both by a single act of interception.").

14        Plaintiff argues that due to Defendants' failure to participate in this action, it cannot be

15  certain of the method of violation and requests the Court award damages under Section 605.  The

16  Court will not hold Plaintiff at fault for this deficiency and shall award damages under Section

17  605.  See Joe Hand Promotions, Inc. v. Fierro, No. 2:13-CV-1550 TLN CKD, 2015 WL 351663,

18  at *2 (E.D. Cal. Jan. 26, 2015) ("Because defendant has not appeared in this action and plaintiff

19  has been precluded from conducting discovery, the precise means of transmission cannot be

20  ascertained.  At a minimum, however, plaintiff's complaint and evidence support a conclusion

21  that defendant intercepted, without authorization, a transmission of the Program and broadcast it

22  to his patrons.  Plaintiff should not be prejudiced by defendant's failure to appear or defend itself

23  in this action and the court concludes, therefore, that statutory damages should be awarded under

24  section 605."); see also DirecTV, Inc. v. Webb, 545 F.3d at 844 ("We hold, among other things,

25  that circumstantial evidence of signal interception can be sufficient . . . Signal piracy is by its

26  nature a surreptitious venture and direct evidence of actual interception may understandably be

27  hard to come by.").

28        The Court finds that Plaintiff's allegation in the complaint that Defendants intercepted,

received and/or published a satellite transmission, as supported by the declarations of counsel, Plaintiff's President, and the affidavit of the investigator, states a claim for a violation of 47 U.S.C. § 605(a) for purposes of default judgment.  See, e.g., J and J Sports Productions v. Coyne, 857 F. Supp. 2d 909, 914 (N.D. Cal. 2012) (commercial establishment violated Section 605 by broadcasting pay-per-view boxing match without authorization).

**b.     Plaintiffs' Cause of Action for Conversion**

To state a claim for conversion under California law, a plaintiff must establish: (1) the plaintiff's ownership or right to possession of the property at the time of conversion; (2) the defendant's conversion of the property by a wrongful act or disposition of property rights; and (3) damages.  Tyrone Pac. Int'l, Inc. v. MV Eurychili, 658 F.2d 664, 666 (9th Cir. 1981) (citing Hartford Financial Corp. v. Burns, 96 Cal.App.3d 591, 598, 158 Cal.Rptr. 169 (1979)); see also Firoozye v. Earthlink Network, 153 F. Supp. 2d 1115, 1129 (N.D. Cal. 2001); Don King Productions/Kingsvision v. Lovato, 911 F. Supp. 419, 423 (N.D. Cal. 1995).   Wrongful interception of television broadcasts can constitute conversion.  Lovato, 911 F. Supp. at 423.

The Court finds Plaintiff's complaint states a claim for conversion.  See, e.g., G & G Closed Cir. Events, LLC v. Zapata, No. 18-CV-01103 NC, 2019 WL 3363793, at *3 (N.D. Cal. Apr. 30, 2019), report and recommendation adopted as modified, No. 5:18-CV-01103-EJD, 2019 WL 3891219 (N.D. Cal. Aug. 19, 2019); G&G Closed Cir. Events, LLC v. Sanchez, No. 18-CV-00382-WQH-KSC, 2018 WL 5311792, at *3 (S.D. Cal. Oct. 26, 2018).

**c.     Plaintiff's Fourth Cause of Action**

Plaintiff is only seeking damages under the claim for violation of Section 605 and for the claim of conversion, and makes no mention of seeking default judgment on the fourth cause of action for violation of California Business and Professions Code.  (Compl. ¶¶ 42-51; Mem. 8-9.) The Court need not address this claim and will not recommend entering judgment on the fourth cause of action brought in the complaint.

**3.     The Sum of Money at Stake in the Action**

Default judgment is disfavored where large amounts of money are involved or the award would be unreasonable in light of the defendant's actions.  G & G Closed Circuit Events, LLC v.

Nguyen, No. 3:11-cv-06340-JW, 2012 WL 2339699, at *2 (N.D. Cal. May 30, 2012).  In this action, Plaintiff is seeking $5,000 in base statutory damages, $25,000 in enhanced statutory damages, and $600 for actual damages flowing from conversion.  Plaintiff plans on submitting a motion for attorneys' fees and costs after judgment is entered.

The Court ultimately finds these requested amounts to be excessive, and recommends a lesser amount be awarded.  Thus, while the amount requested is substantial, the Court finds the amount recommended to be awarded not unreasonable in light of the allegations contained in the complaint and supporting documentation, in addition to the fac that Defendants have failed to appear and dispute the amounts requested in damages.  Accordingly, the Court finds this factor weighs in favor of granting default judgment and awarding the lesser amount than requested as the Court finds herein.

4.    The Possibility of a Dispute Concerning Material Facts

There is little possibility of dispute regarding the material facts due to the factual allegations in the complaint being taken as true upon Defendant's default.  Defendants were properly served, have failed to appear, and therefore have admitted all material facts alleged in Plaintiff's complaint.  See Garamendi, 683 F.3d at 1080; PepsiCo, 238 F. Supp. at 1177 ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages.").  Thus, there is no dispute regarding the material facts due to the factual allegations in the complaint being taken as true upon Defendants' default.

Accordingly, this factor weighs in favor of granting default judgment in favor of Plaintiff.

5.    Whether the Default Was Due to Excusable Neglect

Defendants have been served with the operative complaint and failed to file a responsive pleading.  Although served with the application for entry of default and motion for default judgment, Defendants did not subsequently make an appearance or filing in this action, did not file an objection or opposition to the motion for default judgment, nor did they appear at the July 21, 2021 hearing on the motion for default judgment.  Given these facts, there is no indication or evidence that the failure to respond was due to excusable neglect.  See Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) ("The default of defendant .

14

1  . . . cannot be attributed to excusable neglect.  All were properly served with the Complaint, the

2  notice of entry of default, as well as the papers in support of the instant motion.").

3      Accordingly, the Court finds this <u>Eitel</u> factor weighs in favor of granting default

4  judgment in favor of Plaintiffs.

5      6.    <u>The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring</u>
           <u>Decisions on the Merits</u>
6

7      Default judgments are disfavored because "[c]ases should be decided on their merits

8  whenever reasonably possible."  <u>Eitel</u>, 782 F.2d at 1472.  However, the policy favoring decisions

9  on the merits does not weigh against entering default judgment whereas here the Defendants'

10  failure to appear has made a decision on the merits impossible at this juncture.  Given the

11  prejudice to Plaintiff if default judgment is not granted as discussed above, and the merits of the

12  allegations contained in the complaint, granting default judgment in this case would not violate

13  the general policy under the Federal Rules of Civil Procedure favoring decisions on the merits.

14  <u>See</u> <u>PepsiCo</u>, 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiffs' Complaint

15  makes a decision on the merits impractical, if not impossible. Under Fed. R. Civ. P. 55(a),

16  termination of a case before hearing the merits is allowed whenever a defendant fails to defend

17  an action.").

18      Accordingly, the Court finds the policy favoring decisions on the merit does not preclude

19  entering default judgment against Defendants under these circumstances.

20      7.    <u>The Eitel Factors Weigh in Favor of Granting Default Judgment</u>

21      Based on the foregoing, the Court finds that the <u>Eitel</u> factors weigh in favor of granting

22  default judgment, and recommends that Plaintiff's motion for default judgment be granted.

23      **D.    Relief Requested**

24      As Plaintiff acknowledges, the Ninth Circuit has not established a formula for calculating

25  damages under 47 U.S.C. § 605, and this Court has discretion in awarding such damages.  (Mem.

26  14.)  Plaintiff seeks $5,000.00, or half of the maximum amount ($10,000.00) in statutory

27  damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) (hereinafter referred to as "Base Damages").

28  (Pl.'s Notice Appl. Default J. ("Notice") at 3, ECF No. 15; Mem. 9, 12.)  Plaintiff also seeks

$25,000.00, or $1/4^{th}$ of the maximum amount ($100,000.00) in statutory "enhanced"[5] damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) (hereinafter referred to as "Enhanced Damages").  (Id.) Plaintiff seeks actual damages in the amount of $600 for the conversion claim.  (Notice at 3.)

    1.    Base Damages under 47 U.S.C. § 605

Both Base Damages and Enhanced Damages stem from violations of 47 U.S.C. § 605(a). Plaintiff requests $5,000 in Base Damages under 47 U.S.C. § 605, which provides:

> (3)(A)  Any person aggrieved by any violation of subsection (a) of this section or paragraph (4) of this subsection may bring a civil action in a United States district court or in any other court of competent jurisdiction.
> . . .
> (C)(i) Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;
> . . .
>     (II)  the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just.

47 U.S.C. §§ 605(e)(3)(A)-(C)(i)(II).[6]

Courts have taken several different approaches when establishing the appropriate amount of Base Damages.  In Backman, 102 F. Supp. 2d at 1198, the Court awarded the statutory minimum of $1,000 and reasoned that "distributors should not be overcompensated and statutory awards should be proportional to the violation."  See also Zapata, 2019 WL 3363793, at *2-3 (given no prior violation, up-charging, or advertisements, awarding $1,000 in Base Damages, $0 in Enhanced Damages, and $3,200 in actual conversion damages); Sanchez, 2018 WL 5311792, at *3 (Awarding $4,400 in Base Damages, $0 in Enhanced Damages, and $2,200 in actual conversion damages).

Other courts have focused on the statute's policy of deterring future violations and looked at whether the circumstances were egregious or unusual.  J & J Sports Productions, Inc. v.

---

[5] Although the term "enhanced" does not appear anywhere in the statute, courts have characterized the damages under Section 605(e)(3)(C)(ii) as "enhanced" damages.  See, e.g., J&J Sports Productions v. Lua, 1:14-cv-01350-MCE-SAB, 2015 WL 1509004, at * 4-5 (E.D. Cal. April 1, 2015); Joe Hand Promotions, Inc. v. Streshly, 655 F. Supp. 2d 1136 (S.D. Cal. 2009); Kingvision Pay-Per-View, Ltd. v. Backman, 102 F. Supp. 2d 1196 (N.D. Cal. 2000).  Accordingly, the Court will use the same term when referencing damages under this section.

[6] The alternative method of calculating damages, which was not elected by Plaintiff, is the "actual damages suffered ... as a result of the violation."  47 U.S.C. § 605(e)(3)(C)(i)(I).

Betancourt, No. 08CV937 JLS (POR), 2009 WL 3416431, at *4 (S.D. Cal. Oct. 20, 2009) (awarding $2,000 in Base Damages instead of the $1,000 to promote deterrence, and then tripling to a total of $6,000 as an enhancement); J & J Sports Prods., Inc. v. Lopez-Lopez, No. 217CV01908MCEGGH, 2018 WL 4204584, at *4 (E.D. Cal. Sept. 4, 2018) (noting at least 23 people in attendance and with a goal of deterrence, awarding $35,000 in Base Damages, $10,000 in Enhanced Damages, and $1,800 in actual conversion damages); J & J Sports Prods., Inc. v. Tilakamonkul, No. 1:10-CV-01705 AWI, 2011 WL 2414550, at *5 (E.D. Cal. June 10, 2011) (with goal of deterrence, awarding maximum $10,000 in Base Damages, $20,000 in Enhanced Damages, and $2,200 in conversion damages).

The undersigned has previously recommended between $1,000 and $2,200 in Base Damages, and between $0 and $5,500 in Enhanced Damages, along with actual conversion damages ranging from $2,000 to $6,200.  J & J Sports Prods., Inc. v. Montano, No. 1:12-CV-00738-AWI, 2013 WL 1680633, at *7 (E.D. Cal. Apr. 17, 2013); J & J Sports Prods., Inc. v. Garcia, No. 1:12-CV-01510-LJO, 2013 WL 636707, at *6 (E.D. Cal. Feb. 15, 2013); J & J Sports Prods., Inc. v. Garcia, No. 115CV01732DADSAB, 2016 WL 8678138, at *5 (E.D. Cal. Mar. 18, 2016).[7]

The Court finds that an award of double the statutory minimum for Base Damages, or $2,000 is appropriate in this action.  All-in-all, there is some, but not overwhelming evidence in

---

[7] The Court notes the undersigned has also previously advised counsel to not bring requests for maximum statutory damages without evidence to justify such large requests.  See Garcia, 2013 WL 636707, at * 4 at n.6 ("In future requests for default judgment submitted in this Court, any request for the maximum amount of statutory penalties should be accompanied by an evidentiary showing justifying the maximum amount . . . Plaintiff is hereby forewarned that the Court will not entertain future requests for judgment that are patently unreasonable based upon the evidence submitted."); Montano, 2013 WL 1680633, at * 2 at n.4 (noting Garcia and stating "[s]ince the Court's admonishment occurred before Plaintiff filed the present motion for default judgment in this action, the Court will not take any action against Plaintiff for again requesting maximum statutory penalties with little factual or legal basis for doing so.  However, Plaintiff is again forewarned that future requests for maximum statutory penalties that are not justified by the facts of the case will not be entertained by this Court."); Garcia, 2016 WL 8678138, at *5 (citing the previous two actions, and stating the "Court requests the maximum allowable penalty despite the fact that the facts here do not justify such an award and despite previous admonitions by this Court . . . Given the lack of evidence that Defendant profited, directly or indirectly, from the allegedly illegal display of the Program and Plaintiff's failure to present more detailed evidence or conduct a more thorough investigation, the Court finds that Plaintiff failed to carry its burden in demonstrating that Enhanced Damages are proper.")  It appears counsel has now understood the Court's previous admonishments, and is now only seeking $5,000 instead of the maximum of $10,000 in Base Damages, and $25,000 in Enhanced Damages, instead of the maximum of $100,000.  However, given all of the circumstances, the Court still finds these amounts excessive in this case.

1   this case to support a larger than minimum Base Damages award.  The Court notes there is no

2   evidence which explains Defendants' involvement in the alleged interception and unauthorized

3   broadcast of the Program.  While it is unclear if Defendants were directly involved in the piracy

4   or whether it was an employee or some other subordinate, the evidence demonstrating the

5   Program was advertised on the Facebook account for Las Patronaz indicates that the owners

6   were in fact aware.  However, aside from the Facebook account indicating knowledge, the only

7   direct evidence pertaining to Defendants appears to be limited to the fact that Defendants' names

8   appear on the liquor license for Las Patronaz.

9        There is also little evidence regarding the extent of the commercial advantage gained by

10   Defendants as a result of the alleged piracy.  Plaintiff's private investigator reports that

11   approximately 6 to 8 patrons were present at Las Patronaz when the Program was broadcast, but

12   that information fails to convey much information to the Court in terms of the extent of the

13   commercial advantage gained by Plaintiff since the Court has no information regarding how

14   many patrons are present under normal circumstances when no fight is broadcast.  Even without

15   such evidence, the commercial advantage from 6-8 patrons cannot be that substantial even

16   assuming this doubled or tripled the normal attendance.  Plaintiff admits that there was no cover

17   charge.

18        However, the Court has considered the declaration of the Plaintiff's President that has set

19   forth information concerning the breadth of piracy overall and the impact on normal consumers.

20   The Court finds the proffered evidence of Las Patronaz advertising the fight on its Facebook

21   page to be significant.  Additionally, the Court has also considered the statute's underlying goals

22   of deterring piracy.

23        Based on the above, the Court finds that a $2,000 Base Damages award, double the

24   minimum, considered in combination with the Enhanced Damages award, as well as Plaintiff's

25   actual conversion damages, as discussed in further detail below, along with the additional

26   amount in attorneys' fees and costs that will likely be awarded following judgment, is

27   appropriate.   The $600.00 award on the conversion claim plus attorneys' fees and costs

28   effectively put Plaintiff in the position it would have been if Defendant paid the license fee to

legally broadcast the Program.  The $2,000 in Base Damages along with the Enhanced Damages serves the statute's purpose of deterring future violations and is appropriate given the evidence of advertising.  Future violations by the same Defendant may warrant higher amounts.  Therefore, the Court recommends that Plaintiff be awarded $2,000 in Base Damages.

### 2. Claim for Enhanced Damages

Plaintiff requests $25,000 in Enhanced Damages under 47 U.S.C. § 605, which states:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

47 U.S.C. § 605(e)(3)(C)(ii).

The Enhanced Damages are analogous to punitive damages, as they are awarded at the Court's discretion in cases where a defendant's actions are willful and for the purpose of financial gain.  See BMW of North America, Inc. v. Gore, 517 U.S. 559, 580 (1996) (purpose of punitive damages is to punish and deter egregiously improper conduct).  Factors considered by courts in assessing (C)(ii) Enhanced Damages include: (1) repeat violations; (2) the extent of the unlawful monetary gains; (3) actual damages to the plaintiff; (4) the defendant's advertising for the broadcast of the event; (5) charging cover to enter the establishment to view the event; or (6) charging a premium for food or drinks during the event.  See, e.g., Kingsvision Pay-Per-View, Ltd. v. Gutierrez, 544 F. Supp. 2d 1179, 1185 (D. Colo. 2008); Kingsvision Pay-Per-View, Ltd. v. Backman, 102 F. Supp. 2d at 1198.

The Court finds that (C)(ii) Enhanced Damages are appropriate, though not in the requested amount of $25,000.  There is no suggestion that Defendant is a repeat violator.  There is no evidence of the extent of Defendant's unlawful monetary gains.  Although Defendant's investigator counted between 6 and 8 patrons during the broadcast, there is no evidence that this number was attributable to the Program.  Notably, Plaintiff could have sent its investigator back to the same establishment to perform headcounts at the same time on the same day of the week on days when there was no illegal broadcast for comparative purposes, but Plaintiff chose not to

do so.  was no cover charge or evidence of any premium charged for food or drinks during the broadcast.  In fact, there is no evidence that Defendant was charging anything for food or drinks, as the investigator's affidavit does not state that he attempted to order food or drinks, and does not specifically reference observing any food or drink sales.

On the other hand, the Court finds the evidence of advertising on Facebook to be significant.  The Court has further considered Plaintiff's argues that larger damage awards are justified to combat deter future piracy.

Given the small number of patrons observed, the relatively small amount of actual damages of $600 for an establishment this size as discussed in the following section, and absence of evidence of other enhancing factors aside from advertising, the Court finds the requested amount of $25,000 to be excessive.  However, the Court finds an award of $2,400 in Enhanced Damages, or about four times (4x) the amount of actual conversion damages, is appropriate in this case, given the evidence of advertising, and in consideration the declaration of Plaintiff's President and goals of deterrence.

Accordingly, the Court recommends an Enhanced Damages award of $2,400.

### 3. Conversion Damages

Plaintiff seeks $600.00 in damages for conversion.  (Mem. 18.)  Plaintiff submitted evidence demonstrating that Defendants would have paid $600.00 to Plaintiff if Defendants lawfully obtained the license to broadcast the Program at Las Patronaz.  Therefore, the Court finds that $600.00 is an appropriate damage award for Plaintiff's conversion claim.  Accordingly, the Court recommends that Plaintiff be awarded $600.00 for Plaintiff's conversion claim.

### 3. Attorneys' Fees

Title 47, United States Code, Section 605 mandates an award of costs and attorneys' fees to an aggrieved party. Specifically, the section states that the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."  47 U.S.C. § 605(e)(3)(B)(iii).  Plaintiff requests fourteen (14) days from the entry of judgment to submit its motion for costs and attorneys' fees.

The Court finds the request appropriate and recommends Plaintiff be allowed to submit

1   such request within fourteen (14) days of entry of judgment.

2                                                      **IV.**

3                                   **FINDINGS AND RECOMMENDATIONS**

4            Having reviewed the papers and pleadings submitted in support of the motion for default

5   judgment, the Court finds the Eitel factors weigh in favor of granting default judgment.  See

6   Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (entry of default judgment is within the

7   court's discretion).

8            Based upon the foregoing, the Court HEREBY RECOMMENDS that:

9        1.        Plaintiff's motion for default judgment be GRANTED IN PART, with reductions

10                 in the total sought damages;

11       2.        Judgment be entered in favor of Plaintiff and against Defendants in the total

12                 amount of $5,000, as follows:

13                 A)       $2,000.00 in damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II);

14                 B)       $2,400.00 in damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii);

15                 C)       $600.00 in damages for Plaintiff's state tort claim for conversion; and

16       3.        Plaintiff be ordered to submit a motion for costs and attorneys' fees within

17                 fourteen (14) days from the date of entry of judgment

18           These findings and recommendations is submitted to the district judge assigned to this

19   action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen

20   (14) days of service of this recommendation, any party may file written objections to this

21   findings and recommendations with the Court and serve a copy on all parties.  Such a document

22   should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The

23   district judge will review the magistrate judge's findings and recommendations pursuant to 28

24   U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified

25   time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th

26   Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

27   / / /

28   / / /

Further, Plaintiff is HEREBY ORDERED to serve a copy of this findings and recommendations on Defendants within three (3) days of entry.

IT IS SO ORDERED.

Dated:   **July 27, 2021**

UNITED STATES MAGISTRATE JUDGE